**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 18-1329**

———————————

MOUNTAIN VALLEY PIPELINE, LLC,

Plaintiff - Appellee,

v.

WESTERN POCAHONTAS PROPERTIES LIMITED PARTNERSHIP, Parcel ID
No. 6-5F-1 (Terminated: 1/11/2018), 1-31-10, 1-30-8, 5-26-2,

Defendant - Appellant,

and

D. LANE MCMILLION, Parcel ID No. 1-13-49, 1-13-68; DALE L. MCMILLION,
Parcel ID No. 1-13-49, 1-13-68; ALICIA D. MCMILLION, Parcel ID No. 1-13-49,
1-13-68; PACO LANE, INC., Parcel ID No. 1-18-69; BRIAN ARMSTRONG,
Parcel ID Nos. 1-18-86, 1-18-84; BETH ARMSTRONG, Parcel ID Nos. 1-18-86,
1-18-84; JERRY ALLEN HAMMONS, Parcel ID No. 1-24-35; MARY E. HAMMONS,
Parcel ID No. 1-24-35; BRUCE A. ROBERTS, Parcel ID No. 5-34-2;
KIMBERLY ROBERTS, Parcel ID No. 5-34-2; TODD E. WHITE, Parcel ID No.
5-34-4; TAMARA L. WHITE DELONG, Parcel ID No. 5-34-4;
VIRGINIA D. MCCLUNG, Parcel ID No. 1-24-7; CONNIE MCCLUNG, Parcel
ID No. 1-24-7; ARTIE ORLENA ROBINSON, Parcel ID No. 5-14-22;
DAVID LANE ROBINSON, Parcel ID No. 5-14-22; QUINWOOD COAL
COMPANY, f/k/a Alex Energy, LLC, f/k/a Alex Energy, Incorporated, f/k/a Green
Valley Coal Company, LLC, Parcel ID No. 5-15-28, 5-20-48, 11-30-19;
C. L. KEENER, Estate of (Parcel ID No. 11-22-75); JAMES KEENER, Parcel ID
No. 11-22-75; JOHNNIE RAY KEENER, Parcel ID No. 11-22-75;
BRANDE NICOLE KEENER, Parcel ID No. 11-22-75; DAVID HARMON,
Parcel ID No. 11-22-75; THOMAS KENNER, Parcel ID No. 11-22-75;
CLYDE FOX, Parcel ID No. 11-30-5; MICHAEL FOX, Parcel ID No. 11-30-5;
NAOMI J. FOX, Parcel ID No. 11-30-5; ROBERT W. FOX, Parcel ID No. 11-30-
5; REX COAL LAND COMPANY, Parcel ID No. 11-39-7; EUGENE RAY TUCKWILLER,
Parcel ID No. 11-54-13; TINA ROBIN TUCKWILLER, Parcel ID No. 11-54-13;

SILAS STEVEN TUCKER, Parcel ID No. 11-54-12; LAUREL TUCKER, Parcel ID No. 11-54-12; JEFFREY DEWAYNE OSBORNE, Parcel ID No. 11-68-33; MARTHA I. KESSLER, Unknown heirs of (Parcel ID No. 3-13-24); MARY L. SURBAUGH, Unknown heirs of (Parcel ID No. 3-13-24); NORA E. VANDALL, Unknown heirs of (Parcel ID No. 3-13-24); AZEL FORD ZICKAFOOSE, Unknown heirs of (Parcel ID No. 3-13-24); JOSEPH ORVILLE ZICKAFOOSE, Unknown heirs of (Parcel ID No. 3-13-24); ROBERT C. ZICKAFOOSE, Unknown heirs of (Parcel ID No. 3-13-24); DOREEN S. ALLEN, Parcel ID No. 11-68-10; FREDERECK M. OSBORNE, Parcel ID No. 11-68-10; JO LYNN BLANKENSHIP, Parcel ID No. 11-68-10; MICKEY D. OSBORNE, Parcel ID No. 11-68-10; SCOTT S. OSBORNE, Parcel ID No. 11-68-10; DONNA M. HUFFMAN, Parcel ID No. 09-13-10.1; NORVEL MANN, Parcel ID No. 05-25-31.3; JEAN MANN, Parcel ID No. 05-25-31.3; THOMAS B. MANN, Parcel ID No. 05-25-31.3; HANNAH G. MANN, Parcel ID No. 05-25-31.3; CHLODA CROSIER, Parcel ID No. 05-25-31.3; WILLIAM H. MANN, Parcel ID No. 05-25-31.3; LUCY G. BOOTH, Parcel ID No. 05-25-31.5; HARRY L. MANN, Parcel ID No. 05-25-31.5; NANCY L. PHILLIPS, Parcel ID No. 05-25-31.5; DONALD E. MANN, Parcel ID No. 05-25-31.5; CARL E. MANN, Parcel ID No. 05-25-31.5; LARRY W. MANN, Parcel ID No. 05-25-31.5; BONNIE K. BARBERIE, Parcel ID No. 05-25-31.5; REBECCA K. BRAGG, Parcel ID No. 05-5-27; LANDCEY RAGLAND, Parcel ID No. 05-14-1, 05-14-19.2, 05-14-24; JOHN WHITE, II, Parcel ID No. 05-14-21, 05-18-3.1, 05-19-11.2; PETRIE DOBBS BROWN, Parcel ID No. 05-18-3; ADDISON DUNLAP DOBBS, Parcel ID No. 05-18-3; LEE FILMORE DOBBS, III, Parcel ID No. 05-18-3; OSCAR D. DARAGO, Parcel ID No. 05-18-11; DAVID R. HUGHES, Parcel ID No. 03-12-9; JAMES ROBERT PERSINGER, Parcel ID No. 03-12-19; LILLIAN SUE PERSINGER, Parcel ID No. 03-12-19; STEPHEN C. BROYLES, Parcel ID No. 05-31-25.3; LORRIE P. BROYLES, Parcel ID No. 05-31-25.3; PAULETTE A. SEARS, Trustee of the Paulette A. Sears Family Trust (Parcel ID No. 03-18-32, 03-18-4); MELANIE J. MILLER, Parcel ID No. 03-18-8, 03-18-9, 03-18-10; ANNE C. CHAMBERS, Executrix of the Estate of Thomas P. Long (Parcel ID No. 03-18-23.3); THOMAS P. LONG, The Estate of (Parcel ID No. 03-18-23.3); CAROL M. VASS, Parcel ID No. 03-18-23.4; KENNETH L. VASS, Parcel ID No. 03-18-23.4; LACY H. TONEY, Trustee of the Lacy H. Toney Farm Trust (Parcel ID No. 03-30-18); MOUNTAIN LAIR, LLC, Parcel ID No. 03-30-38; DANNY SPENCE, JR., Administrator of the Estate of Dannie Lee Spence (Parcel ID No. 03-12-7); DANNIE LEE SPENCE, The Estate of (Parcel ID No. 03-12-7); LAURA BOWEN-COFFELT, Trustee of the Susan H. Leeper (a/k/a Ella Susan Houcins) Revocable Living Trust (Parcel ID No. 09-17-10); SUSAN H. LEEPER, a/k/a Ella Susan Houcins, Revocable Living Trust (Parcel ID No. 09-17-10); MONTE G. MCKENZIE, Parcel ID No. 09-17-21; ELORA C. MCKENZIE, Parcel ID No. 09-17-21; EARL C. WILLIAMS, Parcel ID No. 05-25-1.13; ROGER D. CRABTREE, Parcel ID No. 03-30-18.8;

2

REBECCA H. CRABTREE, Parcel ID No. 03-30-18.8; BONNIE LAREW WALSH, Parcel ID No. 05-14-25; GLADYS LAREW CARTER, Parcel ID No. 05-14-25; JAMES TULLY LAREW, Parcel ID No. 05-14-25; JANET LAREW HAAG, Parcel ID No. 05-14-25; ALLAN WALTER LEHR, Parcel ID No. 03-12-22; J. H. HARRAH, Heirs of (Parcel ID No. 3-12-23); IRA HICKMAN HARRAH, Parcel ID No. 3-18-15; RICHARD BERKLEY, Parcel ID No. 7-4-20; ANNE M. BERKLEY, Parcel ID No. 7-4-20; CONNIE HARPER, Parcel ID No. 7-4-19; MELISSA A. LESLIE, Parcel ID No. 7-4-19; ANTHONY D. RICHMOND, Parcel ID No. 7-4-19; DENNIS WAYNE RICHMOND, Parcel ID No. 7-4-19; RHONDA RICHMOND, Administrator of the Estate of Roger L. Richmond (Parcel ID No. 7-4-19); ROGER L. RICHMOND, The Estate of (Parcel ID No. 7-4-19); SANDRA RICHMOND, Parcel ID No. 7-4-19; ERVIN E. RICHMOND, Parcel ID No. 7-4-19; GERALD K. RICHMOND, Parcel ID No. 7-4-19; JESSE JAMES RICHMOND, Parcel ID No. 7-4-19; CAROLYN S. WALLS, Parcel ID No. 7-4-19; RICHARD DEAN WARD, Parcel ID No. 7-4-19; ASHBY A. BOONE, Parcel ID No. 7-7-27.3; EMMA JEAN BOONE, Parcel ID No. 7-7-27.3; DOROTHY MARIE BOONE FOGLE, Parcel ID No. 7-7-27.3; MARK GREY SMITH, Parcel ID No. 7-15A-5; CAITLYN A. GRAGG, Parcel ID No. 7-15-125; GENE WISEMAN, Trustee of the Wiseman Living Trust (Parcel ID No. 7-15-25); PHYLLIS M. WISEMAN, Trustee of the Wiseman Living Trust (Parcel ID No. 7-15-25); ROBERT JACKSON HOLT, Parcel ID No. 3-23-16, 3-23-12, 3-23-15; PHILIP J. HARRAH, Parcel ID No. 3-23-12.3, 3-23-12.4; REINHARD BOUMAN, Parcel ID No. 3-18-17, 3-23-12.2, 3-23-24, 3-18-16, 3-23-12.5; ASHOFTEH ASSAD-BOUMAN, Parcel ID No. 3-18-17, 3-23-12.2, 3-23-24, 3-18-16, 3-23-12.5; MEADOW CREEK COAL CORPORATION, Parcel ID No. 7-4-20.1; KIRANASA SWAMI, Parcel ID No. 3-18-17.1; DANNY R. BERRY, Parcel ID No. 7-15-80.7-80.13; GREGORY L. BERRY, Parcel ID No. 7-15-80.7-80.13; LC MILLER, JR., Parcel ID No. 7-13D-11; JAMES R. MILLER, Parcel ID No. 7-13D-11; CHARLES D. SIMMONS, Parcel ID No. 7-13D-11, 7-13-D-15; SHARON SIMMONS, Administratrix of the Estate of Charles D. Simmons (Parcel ID No. 7-13D-11, 7-13D-15); JOSHUA SIMMONS, Parcel ID No. 7-13D-11, 7-13D-15; JERRY L. CANNADY, Parcel ID No. 7-13D-11, 7-13D-15; BRYAN SIMMONS, Parcel ID No. 7-13D-11; RED HAWK TRUST, Parcel ID No. 7-13E-10; WILLIAM G. LLOYD, Parcel ID No. 7-12F-11; JAMES MCALLISTER, Parcel ID No. 7-13F-2; HILRY GORDON, Parcel ID No. 14-123-41; CHAD W. JOHNSON, Parcel ID No. 14-163-86; MARTHA JEAN KOTSCHENREUTHER, Parcel ID No. 14-163-86; KAREN JEAN KOTSCHENREUTHER, Parcel ID No. 14-163-86; ELSA LYN KOTSCHENREUTHER, Parcel ID No. 14-163-86; BARBARA JUNE REGER, Estate of (Parcel ID No. 14-163-86); BARRY G. PALLAY, Parcel ID No. 18-242-23.1; GLENN D. MATHENY, II, Parcel ID No. 18-282-108; CHARLES CHONG, Parcel ID No. 18-322-14; REBECCA A. ENEIX-CHONG, Parcel ID No. 18-322-14;

3

COURTNEY CECIL, Parcel ID No. 18-321-40; STACEY POSTUS, Parcel ID No. 18-321-40; CLIFFORD S. CLEAVENGER, Parcel ID No. 18-321-40; LAURA CLEAVENGER, Parcel ID No. 18-321-40; TERESA D. ERICKSON, POA for Gerald Wayne Corder (Parcel ID No. 20-362-20); GERALD WAYNE ORDER, Parcel ID No. 20-362-20; LORENA B. KRAFFT, POA for Randall N. Corder (Parcel ID No. 20-362-21); KINCHELOE MITIGATION HOLDINGS LLC, Parcel ID No. 20-421-8, 20-421-5, 20-421-4, & 20-421-6, 03-4A-27 & 03-4A-29; DANNY MARTIN, Parcel ID No. 18-321-40.5, 18-321-41; TINA MARTIN, Parcel ID No. 18-321-40.5, 18-321-41; GARY CASTO, Parcel ID No. 02-4J-39.1; SHARON CASTO, Parcel ID No. 02-4J-39.1; AVERAL TODD CASTO, Parcel ID No. 02-4J-39.1; ARTHUR C. ROBERTS, Parcel ID No. 02-4L-19, 02-4L-12; JUDY D. ROBERTS, Parcel ID No. 02-4L-19, 02-4L-12; FRED L. GOLDEN, Parcel ID No. 01-4M-10, 01-4M-10.1; SHERMAN GAMBLE, Parcel ID No. 01-5P-5; MARY GAMBLE, Parcel ID No. 01-5P-5; DAVID FINSTER, Parcel ID No. 02-4L-16; DONALD J. FINSTER, Parcel ID No. 02-4L-16; PAUL W. FINSTER, Parcel ID No. 02-4L-16; DANA M. FINSTER, Parcel ID No. 02-4L-25; LEONARD G. FINSTER, JR., Parcel ID No. 02-4L-25; VENICE EILEEN FINSTER, Parcel ID No. 02-4L-25; DIANA WIMER, Parcel ID No. 02-4L-25; BRIAN VAN NOSTRAND, Parcel ID No. 6-6D-10; HELEN MONTAGUE VAN NOSTRAND, Parcel ID No. 6-6D-10; GEORGE ERNEST BRIGHT, Parcel ID No. 6-6E-1; JOHN A. BRIGHT, Trustee of the John A. Bright Revocable Living Trust (Parcel ID No. 6-6E-1); WILLIAM TOWNSEND BRIGHT, Parcel ID No. 6-6E-1; WILLIAM H. BROWN, JR., Parcel ID No. 6-6E-1; WILLIAM MORRISON, Trustee under the will of (Parcel ID No. 6-6E-1); ROBERT J. MORRISON, Trustee under the will of (Parcel ID No. 6-6E-1); A. L. MORRISON, for the benefit of (Parcel ID No. 6-6E-1; C. F. MORRISON, Parcel ID No. 6-6E-1; HELENA M. BERRY, Parcel ID No. 6-6E-1; HERMAN R MORRISON, Parcel ID No. 6-6E-1; MARTHA M. COOPER, Parcel ID No. 6-6E-1; RUTH M. WARD, Parcel ID No. 6-6E-1; MABEL M. LEWIS, Parcel ID No. 6-6E-1; MARY E. SEBRING, Parcel ID No. 6-6E-1; MEGANN M. SHEPPARD, Parcel ID No. 6-6E-1; JESSE FRANK WILLIAMS, IV, of the WMS WVMinerals Trust (Parcel ID No. 6-6E-1); WMS WVMINERALS TRUST, Parcel ID No. 6-6E-1; ICG EASTERN, LLC, Parcel ID No. 4-4P-01, 4-4Q-13.1, 4-4Q-15, 4-4Q-16; DALE EASTHAM, Parcel ID No. 4-14-39.3; TRAVIS EASTHAM, Parcel ID No. 4-14-39.3; ANDREW FAIRBANKS, Parcel ID No. 4-14-39.3; BRENT FAIRBANKS, Parcel ID No. 4-14-39.3; DAVID FAIRBANKS, Parcel ID No. 4-14-39.3; MICHAEL FAIRBANKS, Parcel ID No. 4-14-39.3; EDWARD CHARLES SMITH, SR., Parcel ID No. 4-14-39.3; EDWARD CHARLES SMITH, II, Parcel ID No. 4-14-39.3; TODD EDWARD SMITH, Parcel ID No. 4-14-39.3; JEREMY COLLINS, Parcel ID No. 4-14-39.3; NANCY JANE SHEWMAKE BATES, Parcel ID No. 04-35-11; JOHN H. MELVIN, Parcel ID No. 04-29A-1.14; PAMELA J. MELVIN, Parcel ID No. 04-29A-1.14; UNKNOWN PERSONS AND

4

INTERESTED PARTIES; AN EASEMENT TO CONSTRUCT, OPERATE AND MAINTAIN A 42-INCH GAS TRANSMISSION LINE ACROSS PROPERTIES IN THE COUNTIES OF NICHOLAS, GREENBRIER, MONROE, AND SUMMERS, WEST VIRGINIA, et al; CHERYL L. BOONE, Parcel ID No. 7-7-27.2; KERRY N. BOONE, Parcel ID No. 7-7-27.2; MARJORIE BOOTHE, Parcel ID No. 03-18-3; RODGER L. BOOTHE, Parcel ID No. 03-18-3; CHERYL BOWERS, Parcel ID No. 03-18-11; CYNTHIA A. BROYLES MORRIS, Trustee of the William S. Broyles Revocable Trust and the Virginia B. Broyles Revocable Trust, Parcel ID No. 03-24-39; WILLIAM S. BROYLES, Revocable Trust (Parcel ID No. 03-24-39); TAMMY A. CAPALDO, Parcel ID No. 7-15-125; CARLA D. FOUNTAIN, Parcel ID No. 05-19-36, 05-19-24; DENNIS F. FOUNTAIN, Parcel ID No. 05-19-36, 05-19-24; JAMES GORE, Parcel ID No. 03-12-7, 03-12-8; ROBERT M. JARRELL, Parcel ID No. 7-11-15; DAVID ALLEN JOHNSON, Parcel ID No. 05-19-9; EVERETT JOHNSON, JR., Parcel ID No. 05-19-9; WAYNE JOHNSON, Parcel ID No. 05-19-9; MAURY JOHNSON, Parcel ID No. 05-19-9; ZANE LAWHORN, Parcel ID No. 03-12-18; BARRY G. MEADOWS, Parcel ID No. 03-12-18; LISA B. MEADOWS, Parcel ID No. 03-12-18; JOYCE A. REESE, Parcel ID No. 03-30-20; ROY P. REESE, Parcel ID No. 03-30-20; KELLEY ANNE SANDELL SILLS, Parcel ID No. 05-25-1, 05-25-1.6; CLARENCE FRANK SILLS, JR., Parcel ID No. 05-25-1, 05-25-1.6; ELISABETH TOBEY, Parcel ID No. 11-84-10; RONALD TOBEY, Parcel ID No. 11-84-10; AUSTIN B. TONEY, Parcel ID No. 03-12-6; ROSETTA B. TONEY, Parcel ID No. 03-12-6; THOMAS E. TONEY, Parcel ID No. 03-12-6; PATRICIA J. WILLIAMS, Parcel ID No. 05-25-1.13; ORUS ASHBY BERKLEY, Parcel ID No. 7-15A-13, 7-15A-13.1; VIRGINIA B. BROYLES, Revocable Trust (Parcel ID No. 03-24-39),

Defendants.

_____

Appeal from the United States District Court for the Southern District of West Virginia at Charleston. John T. Copenhaver, Jr., Senior District Judge. (2:17-cv-04214)

_____

Argued: September 28, 2018                    Decided: March 13, 2019

_____

Before GREGORY, Chief Judge, WYNN and THACKER, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Thacker joined.

_____

**ARGUED:**  George A. Patterson, III, BOWLES RICE, LLP, Charleston, West Virginia, for Appellant.   Nicolle Renee Snyder Bagnell, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.  **ON BRIEF:**   Fazal A. Shere, BOWLES RICE, LLP, Charleston, West Virginia, for Appellant.   Colin E. Wrabley, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.

GREGORY, Chief Judge:

This appeal arises from a condemnation proceeding commenced by Appellee Mountain Valley Pipeline, LLC ("MVP"). MVP is a natural gas company that was authorized by the Federal Energy Regulatory Commission ("FERC") to exercise the right of eminent domain in order to construct a pipeline. The United States District Court for the Southern District of West Virginia granted MVP partial summary judgment on its right to condemn certain temporary and permanent easements on the properties of several landowners, including Appellant Western Pocahontas Properties, Limited Partnership ("WPPLP"). The district court also granted MVP's motion for a preliminary injunction allowing MVP immediate access to the easements described in MVP's complaint. WPPLP appeals the district court's decision granting MVP's motions for summary judgment and a preliminary injunction. WPPLP also challenges the district court's exclusion of evidence proffered during the preliminary injunction hearing.

For the reasons that follow, we affirm the district court's order in its entirety.


I.

The Natural Gas Act ("the NGA") authorizes the holder of a certificate of public convenience and necessity to condemn land necessary for a particular project if it cannot acquire the land through contract or cannot agree with the landowner as to the compensation. 15 U.S.C. § 717f(h). Our holding in *East Tennessee Natural Gas Co. v. Sage* allows district courts to utilize their equitable power to grant injunctions to gas companies in NGA condemnation proceedings where the company has demonstrated that

7

it has a substantive right to the property pursuant to the NGA and has met the requirements for a preliminary injunction. 361 F.3d 808, 828 (4th Cir. 2004).

On October 13, 2017, FERC issued a certificate of public convenience and necessity to MVP. The FERC certificate authorizes MVP to construct and operate a 303.5-mile natural gas pipeline from Wetzel County, West Virginia to Pittsylvania County, Virginia. After failing to acquire certain properties necessary for the pipeline through negotiation, MVP filed condemnation actions pursuant to the NGA against landowners in three district courts: in the United States District Courts for the Western District of Virginia and the Southern District of West Virginia on October 24, 2017, and in the United States District Court for the Northern District of West Virginia on December 8, 2017. This appeal concerns the action before the Southern District of West Virginia.[1]

In that action, MVP condemned easements on three parcels of land belonging to WPPLP. MVP condemned only the surface of those properties, asserting that the pipeline project did not require condemnation of the mineral rights or coal estate. MVP moved for partial summary judgment on its right to condemn temporary and permanent easements on the properties of several landowners (including those properties belonging to WPPLP) and sought a preliminary injunction allowing immediate access to the properties. MVP requested access to the landowners' property by February 1, 2018, a

---

[1] Other landowners in the three condemnation actions challenge the district courts' issuance of preliminary injunctions before this Court in a consolidated appeal. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, No. 18-1159(L).

8

date MVP claimed would allow it to adhere to its construction schedule, complete tree-clearing in accordance with environmental requirements, and place the pipeline into service in late 2018. On January 19, 2018, WPPLP filed a motion to dismiss the condemnation action for failure to join an indispensable party. The district court granted MVP's motion to strike WPPLP's motion to dismiss from the record, arguing that no pleadings outside of the answer are permitted in an eminent domain proceeding.

On February 7, 2018, the district court held an evidentiary hearing regarding MVP's motion for partial summary judgment and preliminary injunction. At a prehearing conference, WPPLP proffered testimony to be heard at the preliminary injunction hearing. The majority of the proffered evidence would not relate to the surface tracts named in MVP's complaint but would instead address potential damage to coal and to the interests of WPPLP's affiliate, Western Pocahontas Properties, LLC ("WPPLLC") – a party that had not been joined in the condemnation action. The district court excluded the proffered evidence. After confirming with WPPLP that the proffered evidence did not relate to property that MVP sought to condemn in the complaint, the district court found the evidence to be irrelevant. In reaching its conclusion, the district court reasoned that it would not "hear evidence on properties that are not being taken." J.A. 161.

Following the evidentiary hearing, the district court granted MVP's motion for partial summary judgment and preliminary injunction. This appeal followed. WPPLP argues that the district court committed reversible error by: (1) excluding WPPLP's proffered evidence; (2) failing to join WPPLP's affiliate, WPPLLC, as a party to the condemnation action; and (3) granting MVP's motion for summary judgment and

9

preliminary injunction. We address each of WPPLP's challenges below and affirm the district court's order in its entirety.

II.

WPPLP contends that the district court abused its discretion when it precluded WPPLP from introducing evidence regarding potential damage to WPPLP and WPPLLC's coal as a result of the pipeline. MVP responds that the district court did not abuse its discretion, because MVP had the sole power to define the extent of the taking and evidence related to property that MVP did not seek to condemn would therefore be irrelevant. We agree with MVP's position and find that the district court did not abuse its discretion in excluding the evidence.

A district court's evidentiary ruling is reviewed for abuse of discretion. *United States v. Medford*, 661 F.3d 746, 751 (4th Cir. 2011) (citing *United States v. Murray*, 65 F.3d 1161, 1170 (4th Cir. 1995)). Under this standard of review, the appellate court affords the evidentiary ruling "substantial deference," and will not overturn the ruling unless the decision was "arbitrary and irrational." *Id.* (quoting *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir. 2002)). A court abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012) (internal citations omitted).

As WPPLP acknowledges, the general rule laid out by this Court in *United States v. 21.54 Acres of Land, More or Less, in Marshall County* ("*Marshall County*"), is that

10

"the extent of the take is a discretionary decision for the condemning authority which may not be modified by the judiciary." 491 F.2d 301, 304 (4th Cir. 1973).[2] We recognized, however, that the judiciary could take up a landowner's challenge where "the issue . . . is not the extent of the take but rather whether [the condemning authority] has, in fact, accurately described the land in which it intends to take easements." *Id.* at 305. In *Marshall County*, the government chose to condemn "flowage easements" along a creek because it determined that a dam project would raise the ordinary high water mark. *Id.* The government declared its intention to acquire easements in land lying between "the highest elevation of the land to be acquired and the existing ordinary high water mark." *Id.* The government and landowners disagreed about the location of the existing ordinary high water mark. *Id.* Given this factual dispute as to the location of the water mark, we held that the district court could address the issue in order "to effectuate the expressed intention of the condemning authority." *Id.* at 306. The landowners in *Marshall County* did not challenge the scope of the take or seek to force the government to take more than it described in the complaint. Rather, they sought to require the district court to determine what property the government had described in the complaint. In other words, the dispute was not whether the government had to take more than it originally intended but how to give effect to the government's expressed intention.

---

[2] In *Marshall County*, the Court applied this rule to the government, but the rule also applies to a gas company to which eminent domain power has been delegated. *See Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Baltimore and Hartford Counties, Maryland*, 701 F. App'x 221, 226 (4th Cir. 2017).

11

Here, MVP's expressed intention is to condemn easements on the surface of WPPLP's property. Unlike the landowners in *Marshall County*, WPPLP does not debate what the term "surface" means or claim that the surface begins at a different point than MVP asserts. Nor does WPPLP assert that MVP's conception of the "surface" it intends to take is mistaken or that it inaccurately describes the easements listed in the complaint. Rather, WPPLP argues that the pipeline will likely result in damage to coal that belongs to WPPLP and WPPLLC and that MVP must condemn the coal in addition to the properties designated in the complaint.[3] In other words, WPPLP argues that MVP should be required to take more than MVP described in its complaint. However, allowing evidence as to property not described in the complaint in an effort to compel the condemnor to condemn additional property does not comport with our holding in *Marshall County*. Indeed, consideration of such evidence would serve to frustrate the intention of MVP rather than effectuating its expressed intention.

An Eighth Circuit decision we cited favorably in *Marshall County* further illustrates the flawed nature of WPPLP's argument. In *United States v. 3,317.39 Acres of*

---

[3] To the extent evidence of damage to coal within the area condemned by MVP could support the posting of a higher bond, we note that the district court expressly considered an affidavit submitted by WPPLP in which WPPLP's general partner, Gregory Wooten, asserted that the value of its property was far above MVP's estimate due to damage to "near-surface coal" that would be caused by the pipeline. *See* J.A. 1145. After considering the affidavit and other evidence, the district court required MVP to deposit an amount four times the preliminary estimate of its appraiser before taking possession of the condemned property described in the complaint. Similarly, to the extent that the taking impacts the value of improvements on the surface or the value of WPPLP's minerals below the surface, this would also factor in to the ultimate compensation determination in this action.

12

*Land, More or Less, in Jefferson County*, 443 F.2d 104, 105–06 (8th Cir. 1971) ("*3,317.39 Acres of Land*"), the government acquired flowage easements in connection with a project on a river, and the landowners contended that the taking failed to include an additional amount of land that would also be flooded upon completion of the project. Given the landowners' contention, the district court admitted evidence of valuation addressing the "increased" take. *Id.* at 106. The Eighth Circuit reversed, finding that damages must be limited to the land described in the government's declaration of taking. *Id.*

Like the landowners in *3,317.39 Acres of Land*, WPPLP asserts that MVP is going to take more property than it is representing in its complaint and that MVP therefore must condemn that additional property now. However, a gas company authorized by FERC to exercise eminent domain has "the discretion to determine the size" of the easements it needs to take, and the district court is not entitled to modify that decision. *Columbia Gas*, 701 F. App'x at 227; *see also Marshall Cnty.*, 491 F.2d at 304. Therefore, while WPPLP "may recover compensation for these damages in a separate action," it may not "assert such collateral claims within a condemnation proceeding." *Columbia Gas*, 701 F. App'x at 227–28 (internal citations omitted). Contrary to WPPLP's assertion, there is a remedy available to WPPLP (and WPPLLC) should MVP take more than it described in its complaint: an inverse condemnation action. *See United States v. Clarke*, 445 U.S. 253, 257 (1980) (describing an inverse condemnation action as a cause of action against a condemnor "to recover the value of property which has been taken in fact by the [condemnor], even though no formal exercise of the power of eminent domain has been

13

attempted" by the condemnor).  As WPPLP freely admitted at oral argument, all of its potential losses are compensable.  Thus, any losses it may potentially suffer could be recovered in an inverse condemnation action if necessary.  However, evidence of potential damage to property outside MVP's complaint is irrelevant in the condemnation proceeding.

The district court correctly applied our precedent regarding the extent of a taking in determining which evidence to consider at the preliminary injunction hearing. Therefore, the district court did not abuse its discretion when it excluded WPPLP's proffered evidence.

III.

WPPLP next argues that the district court erred by failing to join WPPLLC as an indispensable party.  MVP argues that WPPLP waived its indispensable party argument when it failed to preserve that argument in its answer or to properly develop it in its opening brief.  Because we agree that WPPLP waived its indispensable party argument, we find no error on this basis.

Pursuant to Federal Rule of Civil Procedure 71.1, a defendant in a condemnation proceeding must state all its objections and defenses to the taking in its answer and waives any objections and defenses not so included.  Fed. R. Civ. P. 71.1(e)(3). Moreover, no other pleading or motion asserting an additional objection or defense is allowed.  *Id.*  Here, WPPLP raised its arguments regarding indispensable parties in a motion to dismiss MVP's complaint, which the district court struck from the record.

14

Under the plain language of Rule 71.1 and our precedent, a defendant in a condemnation action is not permitted to file any pleading or motion aside from the initial answer. *See Washington Met. Area Transit Auth. v. Precision Small Engines*, 227 F.3d 224, 228 n.2 (4th Cir. 2000) ("Simply put, no other pleading beside the answer is contemplated." (internal citation omitted)); *see also Atl. Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455, 458 (4th Cir. 1963) (holding that a defendant's motion for a more definite statement and motion to dismiss in a condemnation proceeding were unallowable and recognizing that "[o]ne pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated, not successive pleadings and successive hearings"). Because WPPLP did not raise the indispensable parties argument in its answer to MVP's complaint, it waived its objection on this basis. Therefore, the district court did not err in declining to join WPPLLC in the condemnation action.

## IV.

According to WPPLP, even if the district court did not err in excluding WPPLP's evidence or failing to join WPPLLC as an indispensable party, it nevertheless erred in granting MVP's motion for partial summary judgment and injunction in this case. Because we find no reversible error, we affirm the district court's grant of summary judgment and injunction in favor of MVP.

## A.

We review an award of summary judgment *de novo*. *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011) (internal citation omitted).

15

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the matter on appeal, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Adams*, 640 F.3d at 556; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, we do not weigh evidence or make credibility determinations. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (internal citation omitted).

WPPLP argues that the district court erred in granting MVP's motion for partial summary judgment on its right to condemn. A plaintiff must meet three requirements to exercise eminent domain under the NGA: (1) it must hold a valid FERC certificate; (2) the property it seeks must be necessary to the project; and (3) it must have been unable to acquire the property by agreement. 15 U.S.C. § 717f(h); *see also Equitrans, L.P. v. Moore*, 725 F. App'x 221, 224 (4th Cir. 2018) (per curiam) (holding that where property was necessary for the pipeline, FERC had issued the gas company a certificate, and the gas company was unable to acquire the land by agreement, "the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid . . . as just compensation"). WPPLP does not dispute that MVP holds a valid FERC certificate and that the property it seeks to condemn is necessary to the pipeline. Rather, WPPLP argues that the motion for summary judgment should have been denied, because: (1) MVP made no offer to WPPLP or WPPLLC that included any valuation for coal; and (2) MVP failed to negotiate in good faith when it withheld its third-party engineering firm's evaluation of the effect of the pipeline on WPPLP's coal.

16

We do not find either of WPPLP's arguments persuasive. First, because MVP did not seek to condemn WPPLLC's property in the eminent domain action, MVP was not required to attempt to negotiate or reach an agreement with WPPLLC.[4] *See Marshall Cnty.*, 491 F.2d at 304. Nor was MVP required to make an offer to WPPLP for any of its property that was not described in the complaint. Second, as to WPPLP's argument regarding good faith, we note that this Court has never directly addressed the issue of whether the NGA requires gas companies to seek property by agreement in good faith before exercising eminent domain. We need not resolve that issue here, however, because WPPLP has failed to point to any authority that required MVP to disclose the results of its engineering analysis during negotiations for the surface easements in order to act in good faith. Indeed, WPPLP has not pointed to any evidence in the record that it requested and was denied the analysis. Because MVP was unable to reach an agreement with WPPLP as to the easements described in the complaint, the district court did not err when it granted summary judgment to MVP on its right to condemn. *See* 15 U.S.C. § 717f (h).

WPPLP has not pointed to a genuine dispute of material fact as to MVP's claim to invoke its eminent domain powers. Accordingly, we hold that the district court did not err in granting MVP's motion for summary judgment.

---

[4] For the same reason, even if the FERC certificate required MVP to negotiate with landowners of condemned property, as WPPLP argues, such a requirement would not compel MVP to negotiate for land it was not condemning or with a party that did not own condemned property.

B.

Finally, WPPLP argues that the district court abused its discretion in granting MVP's request for a preliminary injunction. For the reasons that follow, we find that the district court did not abuse its discretion in granting MVP's motion for a preliminary injunction.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and may never be awarded "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008) (internal citations omitted); *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) ("*Winter* thus requires that a party seeking a preliminary injunction . . . must clear[ly] show[] that it is likely to succeed on the merits." (alterations in original) (internal citation and quotation marks omitted)). In order to receive a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20. Each of these four requirements must be satisfied. *Id.* A preliminary injunction is reviewed for abuse of discretion. *Dewhurst*, 649 F.3d at 290 (internal citation omitted). We review factual findings for clear error and legal conclusions *de novo*. *Id.*

As to the first *Winter* requirement, the probability of success on the merits, the district court properly found that it was satisfied. Because MVP had already proved that it had a right to condemn the property at issue, success on the merits was not only

18

probable but guaranteed. As to the second *Winter* requirement, the district court properly determined that MVP had proven that it was likely to suffer irreparable harm absent an injunction. We note that under our precedent, economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation. *See, e.g.*, *Sage*, 361 F.3d at 830. MVP set forth evidence that it would suffer significant unrecoverable financial damages and that it would face delays and miss an internal construction deadline in the absence of an injunction. Accordingly, the district court did not abuse its discretion in finding that MVP had satisfied the second *Winter* requirement.

As to the third *Winter* requirement, the balance of the equities, the district court did not abuse its discretion in determining that the significant irreparable harms faced by MVP in the absence of an injunction outweighed the potential harm of an injunction to WPPLP. We note that the district court did not expressly address the potential that immediate rather than postponed possession could be harmful to certain landowners. The district court relied heavily on our opinion in *Sage* in concluding that the balance of equities tipped in MVP's favor. J.A. 1140 ("In *Sage*, the Fourth Circuit conclusively spoke on this issue in the context of NGA condemnation actions."). While *Sage* is indeed controlling and suggests that the balance of equities may often tip in favor of the pipeline company in the context of NGA condemnations, we take this opportunity to clarify that such an outcome is by no means guaranteed. District courts in NGA condemnation actions must consider the particular harms to landowners in weighing the balance of the equities and may never grant a preliminary injunction "as of right." *See Winter*, 555 U.S. at 24.

After thoroughly reviewing the particular evidence in this case, we agree with the district court that there was no evidence presented of harm to WPPLP resulting from the injunction, as opposed to the pipeline itself, that would outweigh the irreparable harm that MVP would likely suffer absent an injunction. Indeed, there is no indication that WPPLP will suffer any non-compensable harms from the issuance of an injunction. On this record, the district court did not abuse its discretion in finding that the balance of equities tipped in MVP's favor.

Finally, as to the fourth *Winter* element, the district court reasonably determined that the preliminary injunction was in the public interest, because it would allow for expeditious construction of a FERC-approved pipeline. As we explained in *Sage*, the issuance of a FERC certificate signifies that the Commission – the agency charged with administering the NGA – has determined that pipeline construction will advance the congressional purposes behind that Act and "serve the public interest," making available to consumers an adequate supply of natural gas at reasonable prices. 361 F.3d at 830. It follows, we reasoned, that granting a gas company immediate access to necessary easements during the pendency of condemnation proceedings likewise would advance the public interest, because a "delay in construction would postpone these benefits." *Id.*

The district court did not abuse its discretion in applying *Sage* to the facts of this case. As the district court recognized, MVP's certificate rests on an agency finding that the proposed pipeline will benefit the public by meeting a market need for natural gas, and will do so in a way that is environmentally acceptable. J.A. 1141 ("FERC conducted a careful analysis of the [project] and determined that the project will promote [the

NGA's] goals and serve the public interest." (quoting *Sage*, 361 F.3d at 830)). A delay in construction would therefore result in a delay of the benefits of the pipeline.

That is not to say, of course, that a FERC certificate necessarily will be dispositive of the public interest inquiry under *Winter*. Apart from setting an in-service deadline, a FERC certificate does not address timing, and so cannot establish by itself that immediate possession, as opposed to pipeline construction generally, is in the public interest. But echoing our reasoning in *Sage*, the district court here concluded that because delaying construction would delay the public benefits identified by the Commission, the public interest factor favored preliminary relief. And while there may be cases in which there are public-interest arguments against immediate possession that were not considered by the Commission in reviewing the public benefit of the pipeline project writ large, this is not one of them.

We note that the district court did not expressly recognize the distinction between the public interest in pipeline construction generally and in immediate access specifically. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that an *injunction* is in the public interest." (emphasis added)). The district court did, however, incorporate our reasoning under the public-interest prong in *Sage*, which does address that issue and finished with the common-sense observation that a construction delay would postpone the benefits relied on by FERC in issuing its certificate. *See* J.A. 1141 (citing *Sage*, 361 F.3d at 830). Under these circumstances, the absence of additional analysis of the public-interest prong does not amount to an abuse of discretion. We therefore affirm the district court's grant of an injunction to MVP.

21

V.

In sum, the district court did not abuse its discretion in excluding WPPLP's proffered evidence as to property that MVP did not identify in the complaint as part of its taking. The district court also properly declined to join WPPLLC as an indispensable party to the action. Finally, the district court properly granted summary judgment in favor of MVP and did not abuse its discretion in granting MVP's motion for a preliminary injunction. We therefore affirm the district court's order in its entirety.

*AFFIRMED*